United States District Court
Middle District of Florida
Jacksonville Division

**ALFREDO REBELO,**

    *Plaintiff,*

v.                                                No. 3:16-cv-1010-J-PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

## Order Reversing Commissioner's Decision

This is a case under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Acting Commissioner of Social Security denying Alfredo Rebelo's claims for disability insurance benefits and supplemental security income.[1] He seeks reversal, Doc. 17; the Commissioner, affirmance, Doc. 20.

---

[1] The Social Security Administration uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of a denial of benefits. *Bowen v. City of New York*, 476 U.S. 467, 471−72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900−404.906, 416.1400−416.1406. If dissatisfied with the initial determination, the claimant may ask for reconsideration. 20 C.F.R. §§ 404.907−404.918, 416.1407−416.1418. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. §§ 404.929−404.943, 416.1429−416.1443. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967−404.982, 416.1466−416.1482. If the Appeals Council denies review, the claimant may file an action in federal district court. 20 C.F.R. §§ 404.981, 416.1481.

The Commissioner substantially revised the regulations on the consideration of medical evidence for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). Because Rebelo filed his claims before that date, all citations are to the regulations in effect on the date of the ALJ's decision.

## Issue

Rebelo presents one issue: whether the Administrative Law Judge ("ALJ") provided good cause for rejecting the opinions of George Monlux, M.D.

## Background

Rebelo was born in 1973 and last worked in April 2014. Tr. 236, 276. He has a high-school education and experience as a bellman, valet, concrete finisher, casino dealer, and machine operator. Tr. 277. He alleges he became disabled in April 2014 from coronary artery disease; peripheral artery disease; arthritis; and nerve damage in his back, legs, and feet. Tr. 276. He is insured through 2019.[2] Tr. 246. He proceeded through the administrative process, failing at each level. Tr. 1–4, 25–42, 88–149, 152–59, 162–73. This case followed. Doc. 1.

## Evidence

This order adopts the summaries of evidence in the parties' briefs, Doc. 17 at 2–10; Doc. 20 at 8–10. Evidence pertinent to Rebelo's arguments is also summarized here.

In 2011, Rebelo underwent quadruple coronary artery bypass grafting surgery and aortobifemoral bypass surgery to address coronary artery disease and peripheral artery disease. Tr. 411, 625–26. In 2012, he underwent arterial angioplasty (reconstruction of a blood vessel)[3] and stenting (insertion of device to maintain openness of blood vessels) to improve blood flow. Tr. 625.

---

[2]The ALJ states Rebelo is insured through 2018. Tr. 25, 27. Earnings records appear to indicate he is insured through 2019. *See* Tr. 246, 256. He does not raise this as an issue, and it does not matter to the outcome here.

[3]All parenthetical definitions of medical terms are from STEDMAN'S MEDICAL DICTIONARY (William R. Hensyl et al. eds., 25th ed. 1990).

In May 2014, Carolyn Landolfo, M.D., Rebelo's cardiologist at Mayo Clinic, opined Rebelo "has severe coronary and peripheral vascular disease that is chronic; his status will not improve and likely [will] deteriorate over time." Tr. 420. She opined he "cannot perform adequately in his current position given his cardiac limitation." Tr. 420.

In June 2014, Rebelo complained of claudication (limping and pain in legs due to narrowing of arteries). Tr. 625. An arterial study showed borderline reduced flow before exercise and moderately reduced flow after exercise bilaterally, representing worsening since previous testing. Tr. 574.

In July 2014, Rebelo underwent an additional angioplasty in his right superficial femoral artery. Tr. 625. Later that month, he returned for a postoperative follow-up. Tr. 625. Houssam Farres, M.D., performed an arterial study to measure blood flow and observed:

> Review of today's noninvasive arterial study notes an increase on the right with an ABI of 0.98 at rest and 0.87 with exercise. The left ABI remains stable at 0.94 at rest and 0.70 with exercise. Mr. Rebelo will return at 3-months [sic] for followup noninvasive arterial studies with exercise.

Tr. 627. He characterized the results:

> On the right, arterial flow is within the normal range, at rest. On the right, arterial flow appears to be very, mildly, reduced, after exercise, without localizing findings. On the left, arterial flow is very, mildly, reduced, at rest. On the left, arterial flow appears to be mildly, reduced, after exercise, without localizing findings.

Tr. 624 (errors in original).

In September 2014, Dr. Monlux, Rebelo's treating pain-management physician, provided opinions on Rebelo's impairments and limitations. Tr. 688–89. He observed Rebelo has "severe [a]therosclerotic [v]ascular [d]isease" and had undergone six cardiovascular-related surgeries. Tr. 688. He observed that, "[i]n

3

addition to his cardio vascular [sic] problems[,] he had fallen down a flight of stairs and injured his back." Tr. 688. He observed Rebelo had "progressive back pain at T12 and required more pain medication over time." Tr. 688. He observed spine x-rays showed "mild degenerative changes." Tr. 688. He observed Rebelo's treatment had "consisted of higher doses of pain medication than [he] expected" and included Oxycontin and oxycodone. Tr. 688. He opined Rebelo's condition "continues to deteriorate," and some of his back pain "may be vascular[-]related." Tr. 688. He quoted and agreed with Dr. Landolfo's May 2014 opinions. Tr. 688–89. He opined Rebelo could lift and carry up to 5 pounds frequently and up to 10 pounds occasionally. Tr. 689. He concluded:

> It is my opinion that Mr. Alfredo Rebelo has a poor prognosis for recovery. I do not see his back pain that he now has improving in the next 12 months. He is at risk for having a major vascular event at work due to his additional coronary and peripheral vascular disease. I concur with Dr. Landolfo from the Mayo Clinic. It is my opinion that Mr. Rebelo will not be able to return to gainful employment now or in the future.
>
> I believe Alfredo Rebelo has an increased risk for sudden death. This applies to his time at work so in my opinion the risk benefit ratio of attempts to return Mr. Rebelo to work would preclude his return to work. In other words[,] it is not worth the risk of attempting to return this patient back to work.

Tr. 689.

On October 3, 2014, Rebelo saw Dr. Monlux for follow-up and medication refills. Tr. 682. Dr. Monlux noted his office had prescribed Rebelo morphine and oxycodone. Tr. 682. On examination, Rebelo had full range of motion and strength in his spine and a straight-leg test was negative, but he was moderately tender at the sacroiliac joint. Tr. 685. Dr. Monlux observed Rebelo had "severe back pain of unknown etiology (perhaps vascular)." Tr. 66. In a section titled "Instructions," Dr. Monlux noted:

> The patient was specifically informed that their level of narcotic consumption, while indicated given their pain syndrome, does carry

with it an increased risk of sudden death compared to either the normal
population or those taking a lower dose of narcotic. The patient indicated
their understanding.

Tr. 687. Treatment notes from October 30, 2014, were largely the same except for a finding of limited range of motion of the lumbosacral spine. Tr. 677–81.

In April 2015, Rebelo underwent another arterial study, which resulted in the following interpretation:

On the right, arterial flow is borderline, at rest. On the right, arterial
flow appears to be moderately, reduced, after exercise, without
localizing findings. On the left, arterial flow is borderline, reduced, at
rest. On the left, arterial flow appears to be severely, reduced, after
exercise, without localizing findings. This represents a worsening,
bilaterally, since prior testing.

Tr. 724 (errors in original). Later that month, Rebelo presented to an emergency room after taking too much pain medication. Tr. 702. The attending physician opined he would not be surprised if Rebelo died within a year given his comorbid conditions and discussed the possibility of hospice. Tr. 702.

In June 2015, a CT scan showed "30% stenosis [(narrowing)] of the distal right [superficial femoral artery] stent and a 30% stenosis of the mid an[d] distal left [superficial femoral artery]." Tr. 715–16. Dr. Farres reviewed the results and concluded they presented "nothing amenable to repair." Tr. 716. A physician later characterized those findings as reflecting "mild restenosis in [Rebelo's] stents." Tr. 841.

**ALJ's Decision**

At step one,[4] the ALJ found Rebelo has not engaged in substantial gainful

---

[4] The Social Security Administration uses a five-step sequential process to decide if a person is disabled, asking whether (1) he is engaged in substantial gainful activity, (2) he has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1,

5

activity since April 2014. Tr. 27.

At step two, the ALJ found Rebelo suffers from severe impairments of coronary artery disease, status post-coronary artery bypass grafting, peripheral vascular disease, status post-stent placements, generalized osteoarthritis, peripheral neuropathy, degenerative disc disease of the lumber spine, obesity, bipolar disorder, and anxiety. Tr. 27.

At step three, the ALJ found Rebelo has no impairment or combination of impairments that meets or medically equals the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 27–28.

After stating he had considered the entire record, the ALJ found Rebelo has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[5] with additional limitations:

> the claimant can lift/carry/push/pull up to 10 pounds frequently (up to 2/3 of the workday) and no more than 20 pounds occasionally (up to 1/3 of the workday); the claimant can sit 4 hours at a time, for a total of 8 hours per day; the claimant can stand and/or walk for a total of 1 hour at a time, for a total of 4 hours per day with customary breaks; the claimant must never climb ladders, ropes, or scaffolds; the claimant can occasionally climb stairs/ramps; the claimant can frequently balance and stoop; the claimant can occasionally kneel, crouch, and crawl; the claimant must avoid concentrated exposure to extreme temperatures, wetness, and vibrations; the claimant must avoid even moderate exposure to respiratory irritants; the claimant must avoid all exposure

---

(4) he can perform any of his past relevant work given his residual functional capacity ("RFC"), and (5) there are a significant number of jobs in the national economy he can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

to work hazards, including unprotected heights, and dangerous machinery; additionally, the claimant can perform simple, routine tasks, but not complex tasks, consistent with unskilled work with concentration on those tasks for two hour periods with normal work breaks and a lunch; the claimant is limited to occasional (up to 1/3 of the workday) interaction with the public, co-workers, and supervisors.

Tr. 30.

The ALJ discussed Dr. Monlux's September 2014 opinions:

George Monlux, M.D., provided a medical source statement indicat[ing] that the claimant's limitations were lifting 0 to 5 pounds frequently and no more than 10 pounds occasionally. Dr. Monlux noted the claimant['s] [coronary artery disease] and peripheral vascular disease indicating that his back pain would not improve and overall did not see that the claimant could … return to work. The undersigned finds that this is not a specific opinion, with regards to weight restrictions. However, the opinion that the claimant cannot return to work is not substantiated by the record. While the claimant has had numerous stents and claudications, his most recent ultrasound testing in July 2014 revealed the right arterial flow was in normal range, with only mild reduced flow with rest and exercise. On the left, there was very mild reduced flow at rest and after exercise. The claimant was seen to be stable and advised to return to the clinic for a three-month follow-up. While focusing on his spine disorder, the undersigned must focus on Dr. Monlux's treatment for such. His progress notes do not support that his back disorders are such that would preclude him from all work activity. In light of this, there is no indication that the claimant is not stable or unable to work within the above mentioned limitations. Even more, October 2014 progress notes reveal that only tenderness of the lumbar spine with limited range of motion with flexion and extension was noted. Straight leg raise was negative bilaterally. Joint stability of the right and lower extremities were within normal limits. He had full range of motion of the right and lower extremities. A more recent February 2015 MRI of the lumbar spine identified only disc protrusions at the thoracic level without stenosis. The claimant's examinations and conservative treatment do not support Dr. Monlux's conclusions.

Tr. 37 (internal citations omitted).

At steps four and five, the ALJ found Rebelo cannot perform his past relevant work[6] but can perform jobs the vocational expert identified (warehouse checker, small-parts assembler, table worker, addresser, and surveillance-systems monitor) and those jobs exist in significant numbers in the national economy. Tr. 40–42. He therefore found no disability. Tr. 42.

**Standard of Review**

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* A court must affirm the ALJ's decision if substantial evidence supports it, even if the evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

**Analysis**

Rebelo argues the ALJ did not provide good cause for rejecting Dr. Monlux's opinions. Doc. 17 at 14–19. He contends the weight restrictions Dr. Monlux found are specific, substantial evidence does not support the finding that his peripheral vascular disease had stabilized as of July 2014, substantial evidence does not support the finding that the opinions were based only on his spinal disorders, substantial evidence does not support the finding he received only conservative treatment, the

---

[6]"Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. §§ 404.1560, 416.960.

opinion of his treating cardiologist supports Dr. Monlux's opinions, and the state-agency physicians provided their opinions without the benefit of later records showing continued worsening of his vascular conditions. Doc. 17 at 14–19.

The Commissioner responds Dr. Monlux's opinions were mostly conclusory and outside his area of expertise; the opinion Rebelo cannot work is not a medical opinion entitled to significant weight; the finding Dr. Monlux provided no specific opinion on weight limitations was harmless; substantial evidence supports the ALJ's finding that in July 2014, arterial flow was normal or mildly reduced and stable; any subsequent deterioration was mild and resulted from Rebelo's failure to follow treatment; substantial evidence supports the ALJ's finding Dr. Monlux's opinions were based primarily on spinal disorders, evidence of which did not support the limitations he found; any error in characterizing Rebelo's treatment as conservative was harmless; and the ALJ properly relied on state-agency physicians' opinions. Doc. 20 at 6–14.

Regardless of its source, the Social Security Administration "will evaluate every medical opinion" it receives. 20 C.F.R. §§ 404.1527(c), 416.927(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of … impairment(s), including … symptoms, diagnosis and prognosis, what [one] can still do despite impairment(s), and … physical or mental restrictions." 20 C.F.R. § 404.1527(a), 416.927(a). Opinions on dispositive issues, such as whether a claimant is disabled or able to work, are not medical opinions because they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of a claim is rational and supported by substantial evidence." *Id.* "Unless [an ALJ] has analyzed

9

all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (internal quotation marks omitted). If an ALJ does not "state with at least some measure of clarity the grounds for his decision," a court will not affirm simply because some rationale might have supported it. *Winschel*, 631 F.3d at 1179.

The Social Security Administration generally will give more weight to the medical opinions of treating sources[7] because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ need not give more weight to a treating source's opinion if there is good cause to do otherwise and substantial evidence supports the good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if the evidence does not bolster the opinion, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the treating source's own medical records. *Id.* at 1240−41.

Unless the Social Security Administration gives a treating source's opinion controlling weight, it will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. §§ 404.1527(c),

---

[7]A treating source is a physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the treatment or evaluation required for the medical condition. 20 C.F.R. §§ 404.1502, 416.902.

416.927(c). In considering the nature of a physician's treating relationship with a claimant, the Social Security Administration

> will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if [a claimant's] ophthalmologist notices that [he has] complained of neck pain during [his] eye examinations, [the Social Security Administration] will consider his or her medical opinion with respect to [the claimant's] neck pain, but [it] will give [the opinion] less weight than that of another physician who has treated [the claimant] for neck pain.

20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

"[O]pinions of nonexamining, reviewing physicians … when contrary to those of [] examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). But the "law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

The ALJ provided four reasons for rejecting Dr. Monlux's opinions: (1) Dr. Monlux did not provide a "specific opinion" on Rebelo's weight limitations; (2) a July 2014 arterial study showed only mildly reduced blood flow, and Rebelo "was seen to be stable"; (3) Dr. Monlux's progress notes addressing Rebelo's musculoskeletal spine problems and a February 2015 lumbar-spine MRI do not support a finding of disability because they contain relatively mild objective findings; and (4) Rebelo received conservative treatment. Tr. 37. Substantial evidence does not support the reasons.

The first reason—that Dr. Monlux provided no "specific opinion" on Rebelo's weight restrictions—is wrong. As the ALJ recognized, Dr. Monlux opined that Rebelo could lift no more than 5 pounds occasionally and 10 pounds frequently. *See* Tr. 689.

11

Given that level of specificity (which matches the specificity with which the ALJ described the weight limitations he found in assessing the RFC, *see* Tr. 30), as the Commissioner concedes, Doc. 20 at 8, it is unclear what the ALJ meant. It could very well have been just be a typo in the decision—perhaps the ALJ inadvertently omitted "except" ("The undersigned finds that this is not a specific opinion, [**except**] with regards to weight restrictions.")—but it is not clearly enough a typo to assume it one.

On the second reason, the ALJ found the July 2014 arterial study and related notes resulted in normal or mild findings and Rebelo was "seen to be stable."[8] Tr. 37. Neither the study nor other records documenting the progression of Rebelo's peripheral vascular disease support that he had stabilized with only mildly reduced blood flow. Treatment notes discussing the study indicate that Rebelo presented with complaints of claudication in June, he underwent an additional angioplasty in his right superficial femoral artery in early July, and study results from two weeks later showed increased flow on the right and "stable" flow on the left. Tr. 624–25, 27. Use of the word "stable" in that context indicates only that the blood-flow measurements on the left were unchanged from the previous measurement; it does not indicate Rebelo's doctors considered his condition as a whole stable. Indeed, the previous study results represented worsening from the prior study. *See* Tr. 574. Other records confirm that reading and contradict the finding he had stabilized. In May 2014, Dr. Landolfo opined Rebelo's peripheral vascular disease would not improve and would likely deteriorate over time. Tr. 420. In April 2015, a follow-up arterial study showed notable worsening of blood flow bilaterally. Tr. 724. In June 2015, studies showed 10- to 30-percent "restenosis," indicating renarrowing of blood vessels previously repaired through surgery. Tr. 715–16, 841.

---

[8]The ALJ refers to the July 2014 record as an ultrasound. Tr. 37. Treatment notes refer to it as "ABI." Tr. 627. That initialism refers to the ankle-brachial index test, which involves comparing a patient's blood pressure measured at the arm and ankle. *See* Mayo Clinic, *Tests and Procedures: Ankle-brachial index*, *available at* http://www.mayoclinic.org/tests-procedures/ankle-brachial-index/basics/definition/prc-20014625 (last visited Sept. 20, 2017).

The Commissioner contends the deterioration of Rebelo's peripheral vascular disease was only mild and resulted from his failure to follow prescribed treatment. Doc. 20 at 9. But the ALJ did not rely on those reasons in rejecting Dr. Monlux's opinions; instead, he found, contrary to the records discussed above, that Rebelo had stabilized as of July 2014. The ALJ did not explain why evidence of later deterioration did not undermine the finding that Rebelo had stabilized, and the Court cannot rely on the Commissioner's after-the-fact rationalization of the ALJ's decision. *Cf. Winschel,* 631 F.3d at 1179. The mere description of the restenosis as "mild" does not change that Rebelo's condition continued to deteriorate, particularly because the records showed narrowing of previously repaired vessels.[9]

On the third reason, the ALJ focused too narrowly on Dr. Monlux's treatment of Rebelo's musculoskeletal issues related to the spine and other evidence concerning the severity of those issues. Dr. Monlux's treatment notes and opinions do not focus only on Rebelo's spinal disorders. Instead, they indicate he evaluated Rebelo's condition considering both spinal and vascular issues; he noted Rebelo's back pain had an "unknown etiology" and suggested the pain could be vascular in origin. Dr. Monlux's opinions are not restricted to limitations resulting from Rebelo's spinal disorders. The ALJ appears to not have even considered Dr. Monlux's opinion that Rebelo's back pain possibly arose from a combination of his spinal and vascular

---

[9]The Commissioner observes Rebelo failed to quit smoking despite being advised to do so and argues that constitutes a failure to follow prescribed treatment. Doc. 20 at 9.

An ALJ may find a claimant not disabled if he fails to follow prescribed treatment "without a good reason." 20 C.F.R. §§ 404.1530(b), 416.930(b). But to do so, he "must find that if the claimant followed the prescribed treatment, his ability to work would be restored, and this finding must be supported by substantial evidence." *Patterson v. Bowen,* 799 F.2d 1455, 1460 (11th Cir. 1986).

Though the ALJ observed doctors had noted Rebelo's smoking was a major factor causing his vascular issues, *see* Tr. 32, 35–36, he did not reference Rebelo's failure to quit or cite it as a reason to find him not disabled or reject his testimony or the opinions of Dr. Monlux.

13

conditions.[10] *See generally* Tr. 32–40. Because Dr. Monlux based his opinions on Rebelo's condition as a whole, substantial evidence does not support the ALJ's finding that evidence of his spinal issues alone contradicts those opinions.

The Commissioner contends the primary bases for Dr. Monlux's opinions were Rebelo's spinal disorders, but Dr. Monlux's notes do not support that characterization. Though he discussed those disorders and his treatment of them, the bulk of the opinion concerns Rebelo's vascular issues. *See* Tr. 688–89. He described Dr. Landolfo's May 2014 opinion as "the key milestone event." Tr. 688. Viewing Dr. Monlux's treatment notes and opinions as a whole, he appears to consider Rebelo's peripheral vascular disease as a potential explanation for severe back pain otherwise not fully explained by relatively mild spinal impairments.

On the fourth reason, in light of the ALJ's statement he "must focus on Dr. Monlux's treatment for" Rebelo's spinal disorders, the ALJ appears to refer only to the treatment Dr. Monlux prescribed for those impairments, rather than Rebelo's overall course of treatment (which, as Rebelo observes, includes several vascular surgeries). Still, Dr. Monlux prescribed morphine and oxycodone—both narcotics. The nature and dose of the prescribed medication prompted him to caution Rebelo he was at a greater risk of sudden death as compared with the general population or those taking lower doses. *See* Tr. 681, 687. It is a stretch to characterize as "conservative" treatment with such strong pain medication under the circumstances here. *Cf. Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 n.2 (11th Cir. 2015) (citing with approval magistrate judge's statement that use of strong medication is not

---

[10]In stating he "must focus on Dr. Monlux's treatment for" Rebelo's spinal disorder, it does not appear the ALJ relied on the regulations permitting giving less weight to a physician's opinions on impairments he did not treat. Instead, he appears not to have considered Dr. Monlux's opinions at all to the extent they were based on impairments for which he was not the primary treating physician. Dr. Monlux's opinions on the severity of Rebelo's vascular impairments, though perhaps entitled to less weight than opinions from physicians treating those impairments, were still entitled to consideration. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

consistent with a finding of conservative treatment); *Wheelock v. Comm'r of Soc. Sec.,* No. 6:16-cv-860-Orl-37KRS, 2017 WL 3267800, at *5 (M.D. Fla. June 28, 2017) (unpublished) (concluding prescription of strong narcotic pain medication was inconsistent with ALJ's finding of conservative treatment, particularly when "the record does not contain evidence that more aggressive treatment was medically appropriate"), *report & recommendation adopted*, 2017 WL 3251567 (M.D. Fla. July 31, 2017) (unpublished). The Commissioner does not appear to contend otherwise. *See* Doc. 20 at 11–12.

Even assuming Dr. Monlux's decision not to recommend treatment beyond pain medication constitutes a conservative course of treatment, that fact does not undermine his opinions. As discussed, he evaluated Rebelo's condition as a whole, recognizing severe peripheral vascular disease (which was more aggressively treated) likely contributed to his back pain. That Dr. Monlux declined to pursue more aggressive intervention to treat the spinal disorders does not mean the limitations he found based in part on vascular issues are unsupported.

Because substantial evidence does not support the ALJ's reasons for rejecting Dr. Monlux's opinions, remand for reconsideration of them is warranted.[11]

Having concluded remand is warranted to reconsider Dr. Monlux's opinions, to the extent Rebelo challenges the ALJ's evaluation of the state-agency physicians'

---

[11]Though the ALJ limited Rebelo to a reduced range of light work, the vocational expert identified both light and sedentary jobs, and the ALJ found Rebelo can perform them. *See* Tr. 41–42, 82–84. Because Dr. Monlux found Rebelo can lift and carry up to 5 pounds frequently and up to 10 pounds occasionally, *see* Tr. 689, it is possible Rebelo would be able to perform the identified sedentary jobs. Nevertheless, finding the ALJ's erroneous rejection of Dr. Monlux's opinion harmless based on the identification of sedentary jobs is unwarranted because (1) the Commissioner does not raise that argument, *see generally* Doc. 20; (2) Dr. Monlux provided other opinions, including that Rebelo was at an increased risk of sudden death or a major vascular event, making a return to work too risky, *see* Tr. 689; (3) Dr. Monlux's weight restrictions do not exactly correspond to the definition of sedentary work, *see* 20 C.F.R. §§ 404.1567(a), 416.967(a); and (4) a vocational expert's testimony can only provide substantial evidence for an ALJ's finding at step five if it includes all of a claimant's limitations, *see Winschel*, 631 F.3d at 1180.

opinions, *see* Doc. 17 at 18, the Court declines to address that argument. On remand, the Commissioner should reevaluate those opinions and any other evidence as necessary.

## Conclusion

The Court **reverses** the Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and **remands** the case to the Commissioner with directions to reevaluate the opinions of Dr. Monlux and take any other necessary action. The Court **directs** the clerk to enter judgment in favor of Rebelo and close the file.

**Ordered** in Jacksonville, Florida, on September 27, 2017.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record